HOWARD C. PRATT ET AL *v.* BALLMAN-CUMMINGS FURNITURE COMPANY ET AL

73-5                                                              495 S.W. 2d 509

Opinion delivered May 28, 1973
[Rehearing denied July 2, 1973.]

*Hardin, Jesson & Dawson* and *Pearce, Robinson & McCord,* for appellants.

*Bethell, Callaway & Robertson,* for appellees.

LYLE BROWN, Justice. The appellants are minority stockholders of Ballman-Cummings Furniture Company of Ft. Smith. They claim that by a vote of the majority stockholders of Baldwin-Cummings, the corporation, under the pretext of forming a partnership with Ft. Smith Chair Company, Inc., accomplished a de facto merger or consolidation of the two corporations. If the arrangement is in fact a partnership it is authorized by Ark. Stat. Ann. § 64-104 (B. 6) (Repl. 1966); if the arrangement constitutes a merger then the appellants, protesting minority stockholders, are entitled to be paid by the succeeding corporation, the fair value of their stock. Ark. Stat. Ann. § 64-707 (Repl. 1966).

At the close of plaintiffs' (appellants') case the chancellor sustained a challenge to the sufficiency of the evi-

dence, making this finding: "Not only have plaintiffs failed to establish factually or as a matter of law a statutory merger or consolidation, sale or exchange, but they have also failed as well by their proof to establish even a de facto change to support their theory of entitlement to recovery herein. A difference of opinion with or over management alone is not sufficient."

The Ayers family of Ft. Smith, by virtue of its stock holdings, is in control of both corporations and the corporations have interlocking directors.

The partnership agreement was executed in November 1967. It provided that the partnership would consist of two partners, naming the two corporations. The name of the partnership was designated Ayers Furniture Industries. Each partner would contribute $1500 to the initial capital of the partnership. It was agreed that each corporation would sell its merchandise to the partnership. The partnership would be responsible for all merchandising functions in connection with the promotion and sale of furniture. It would also handle billing and collection of accounts receivable. The partnership would also assume the responsibility for the delivery of furniture to customers. (It was explained by witness John Ayers, ownership of the furniture by the partnership made it possible to load furniture produced by both factories in a single trailer which otherwise was not permitted by ICC regulations.) It was also explained by the same witness that the partnership would eliminate the duplication of expenses of billing and collections. It was also provided that the partners would designate one individual as a general manager of the partnership who would be fully authorized to conduct the business and affairs of the partnership.

It would be most difficult to say that the partnership arrangement, as exemplified by the agreement which we have briefly described, constituted in and of itself a merger of the two corporations. We gather, particularly from oral argument, that appellants recognize this as a fact. On the other hand, there are well recognized in the law, de facto mergers—an association under the guise of a partnership whereby one of the corporations loses its identity as such and is actually controlled by the management of the partnership. When a particular corporate

combination "is in legal effect a merger or a consolidation, even though the transaction may be otherwise labeled by the parties, the courts treat the transaction as a de facto merger or consolidation so as to confer upon dissenting stockholders the right to receive cash payment for their shares". 15 Fletcher Cyclopedia Corporations § 7165.5.

Mr. John Ayers is the chief officer of Ballman-Cummings, of Ft. Smith Chair, and of the partnership. It is the position of appellants, while asserting that they do not accuse Mr. Ayers of fraud, that under his executive direction, Ballman-Cummings has lost its long standing identity in the market place. That development, so they say, has resulted in consistent annual losses by the corporation of thousands of dollars, while the profits of Ft. Smith Chair remained stable. The evidence shows that Ballman-Cummings is in the process of liquidation.

In holding as we do, we do not mean to insinuate that appellants preponderantly established a case for relief, but we do say that they made a prima facie case. Having done so it was error for the court to grant appellees' motion at the close of appellants' case, particularly when giving the evidence its strongest probative force in favor of appellants. *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W. 2d 225 (1950).

According to appellants the events which brought about the alleged destruction of Ballman-Cummings are summarized in their brief and their argument, and absent any other explanation, are persuasive:

> Not only is the separate identity of the merging corporations as marketing entities replaced by the image of a separate and new entity, but Article 2, Section 5 (Articles of Partnership) provides: "The partners shall designate one individual as a General Manager of the partnership who will be fully authorized to conduct the business and affairs of the partnership".

> Furthermore, the management, sales and bookkeeping functions of the two corporations were entirely merged together, with a single officer, not the one elected by the directors of each corporation, in charge of each

function. John Ayers became the General Manager of both corporations and the partnership, or more properly of both corporations in the partnership. Prior to the merger each corporation had a sales manager, after the merger Gene Rapley who had been sales manager for Ballman-Cummings became sales manager for the combined operations, while Tom Condren who had been sales manager for Chair Company became the designer for the combined operations. The controller for one corporation, Mr. Layman, was placed in charge of the accounting processes for the combined operations, while the controller for the other corporation, Mr. Thompson, took over the credit collection and customer service activities of the combined operation. Dale Keller, who had been purchasing agent for Ballman-Cummings, became purchasing agent for the combined operations, while Mr. Keller who had been with Chair Company became the chief assistant in the purchasing department.

Whether there is a correlation between the shifting of the described responsibilities and the resultant folding of Ballman-Cummings is not the question; the question is whether a prima facie case was made. We think it was. We might add that no solid reason was given by Mr. Ayers for Ballman-Cummings' collapse. There was only a general statement that it was due to economic reasons. Mr. Ayers said he had no explanation why the loss of Ballman-Cummings rose so severely except "apparently loss cycles that we had been experiencing, the problems we had been experiencing in production were pyramiding on us during that year". Appellees are also burdened by the fact that the partnership was proposed on the basis that it would increase profits, which of course it did not do.

This statement from *Werbe* v. *Holt, supra,* is apropos in the case before us:

Furthermore, in many instances the plaintiff's prima facie case must necessarily be somewhat weak, for the reason that only the defendant himself may be able to supply details needed to complete the picture. If the case goes to the trier of the facts on the plaintiff's proof alone, the defendant has the advantage of not exposing weaknesses in his own armor unless called

to the witness stand by his adversary. For these reasons we have no hesitancy in adopting the majority rule as to the function of a demurrer to the evidence.

Reversed and remanded.